IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Estate of | ) | |
| | ) | No. 34590-4-III |
| JASON L. PATTON | ) | |
| | ) | PUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, C.J. — Do administration expenses of a decedent's estate hold priority above the decedent's secured debt to the proceeds from a nonjudicial foreclosure of the secured real property? After reviewing the probate code and the deed of trust act, we answer in the negative and reverse the trial court's order establishing priority in favor of administration expenses.

## FACTS

In 2007, Jason Patton obtained an $115,000 home loan from Countrywide Home Loans, Inc. A deed of trust on Patton's Union Gap residence secured the loan. Countrywide recorded the deed of trust with the Yakima County Auditor on May 24, 2007. When Bank of America shortly thereafter purchased Countrywide, Bank of America became the beneficiary under the trust deed.

In 2014, Jason Patton died intestate. The probate court appointed a guardian ad litem for Patton's only heir, a minor. The Estate of Jason Patton (Estate) petitioned the probate court for letters of administration, and the court appointed Patton's brother,

Robert Patton, to serve as the personal representative. The Estate made no payments on the home loan.

The Estate of Jason Patton sent notice to creditors pursuant to RCW 11.40.030. The Estate then petitioned the probate court for limited nonintervention powers. In the petition, the Estate listed its assets and the assets' respective values as less than $1,000 cash, two vehicles worth approximately $1,300 combined, and the Union Gap residence with a fair market value of $75,000. The petition claimed the Estate to be insolvent because the debt to Bank of America exceeded $112,060.39 in principal alone. The probate court granted the petition for limited nonintervention powers.

Two creditors filed claims with the Estate: the city of Union Gap for $107.98 in unpaid utility bills and Bank of America for $116,932.69 owed on the home loan. The Estate recorded two notices of costs of administration with the Yakima County Auditor: attorney fees and costs for the personal representative amounting to $11,546.75 and $1,177.92 for guardian ad litem fees.

## PROCEDURE

On February 24, 2016, the personal representative of the Estate of Jason Patton petitioned the probate court for approval of a sale of the Union Gap residence, due to insolvency. The personal representative also asked for an order that, under RCW 11.76.110, attorney fees of the Estate and guardian ad litem fees be paid first from the

2

sale of the residence before Bank of America received any sum. Thereafter, the trustee of the deed of trust sent notice of its intent to conduct a nonjudicial foreclosure sale of the Union Gap residence, with a sale scheduled for July 15, 2016.

Bank of America opposed the Estate's petition seeking approval of the Estate's sale of the residence and the Estate's proposed distribution of sales funds. Bank of America contended that RCW 11.76.110 did not establish any order of payment from a deed of trust sale because the bank, under RCW 11.40.135, could realize on its security independent of the probate process.

At the hearing on the Estate of Jason Patton's petition, the Estate withdrew its request to sell the residence and agreed not to oppose the scheduled nonjudicial foreclosure. Nevertheless, the Estate still sought an order from the probate court confirming that RCW 11.76.110 required that sale proceeds reimburse the costs of administering the Estate before the remainder be distributed to Bank of America. The Estate observed that RCW 11.96A.160 directs that the guardian ad litem's compensation come from the principal of the estate. The Union Gap residence constituted an asset of the Estate. The Estate argued that RCW 11.76.110 created a super priority lien on all decedent's assets in favor of administration expenses. The Estate asserted a fear that small decedent's estates would go unadministered if the administration expenses bore no super priority, particularly when the value of the Estate assets deceeded the secured debt.

3

The probate court ruled in favor of the Estate of Jason Patton and directed that any proceeds from the sale of the Union Gap residence apply first to estate administration costs.

## LAW AND ANALYSIS

This appeal presents the narrow question of whether RCW 11.76.110 creates a lien with priority over an earlier recorded real property encumbrance such that proceeds from the sale of the real property go first to pay expenses to administer the estate. Bank of America contends that RCW 11.76.110 does not authorize a court to award a super priority lien. According to the bank, since it recorded its deed of trust before any obligation of the Estate of Jason Patton to pay administration expenses, the deed of trust holds priority to any lien on the encumbered home for the expenses. The Estate filed no responsive brief.

We review four statutes in order to discern how the Washington State Legislature would desire us to answer the question on appeal. Our primary statute, RCW 11.76.110, a section of the probate code entitled order of payment of debts, declares:

> *After payment of costs of administration* the debts of the estate shall be paid in the following order:
> (1) Funeral expenses in such amount as the court shall order.
> (2) Expenses of the last sickness, in such amount as the court shall order.
> (3) Wages due for labor performed within sixty days immediately preceding the death of decedent.
> (4) Debts having preference by the laws of the United States.

4

(5) Taxes, or any debts or dues owing to the state.

(6) Judgments rendered against the deceased in his or her lifetime which are liens upon real estate on which executions might have been issued at the time of his or her death, *and debts secured by mortgages in the order of their priority.*

(7) All other demands against the estate.

(Emphasis added.) The Estate of Jason Patton, before the probate court, relied on RCW 11.76.110. We juxtapose another probate statute. RCW 11.40.135 states:

If a creditor's claim is secured by any property of the decedent, this chapter does not affect the right of a creditor to realize on the creditor's security, whether or not the creditor presented the claim in the manner provided in RCW 11.40.070.

A third probate statute, RCW 11.96A.160, reads:

(1) The court, upon its own motion or upon request of one or more of the parties, at any stage of a judicial proceeding or at any time in a nonjudicial resolution procedure, may appoint a guardian ad litem to represent the interests of a minor. . . .

. . . .

(4) The guardian ad litem is entitled to reasonable compensation for services. Such compensation is to be paid from the principal of the estate or trust whose beneficiaries are represented.

We end with a section of the deed of trust act found in chapter 61.24 RCW:

The trustee shall apply the proceeds of the sale as follows:
(1) To the expense of sale, including a reasonable charge by the trustee and by his or her attorney. . . .
(2) To the obligation secured by the deed of trust; and
(3) . . . Interests in, or liens or claims of liens against the property eliminated by sale under this section shall attach to the surplus in the order of priority that it had attached to the property, as determined by the court.

RCW 61.24.080.

5

The fundamental goal of statutory interpretation is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). When interpreting a statute, courts look first to the statute's plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We discern plain meaning from the ordinary meaning of the language at issue, the context of the statute, related provisions, and the statutory scheme as a whole. *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). We attempt to harmonize apparently contradictory statutes prior to resorting to canons of construction that give preference to one statute over another. *Bank of America, N.A. v. Owens*, 173 Wn.2d 40, 53, 266 P.3d 211 (2011). When statutes conflict, the specific statute prevails over a general statute. *O.S.T. v. Regence BlueShield*, 181 Wn.2d 691, 701, 335 P.3d 416 (2014).

For reasons stated below, we doubt that RCW 61.24.080 and RCW 11.76.110 conflict. Nevertheless, we note that RCW 61.24.080, not RCW 11.76.110, exclusively addresses distribution of funds from proceeds of a deed of trust nonjudicial foreclosure sale. For this and other reasons, we conclude that, after foreclosure costs, Bank of America deserves full payment of the debt owed it from the proceeds from the deed of trust sale before any payment to the Estate of Jason Patton.

In the probate court the Estate of Jason Patton, based on RCW 11.76.110, asserted a super priority lien on the deed of trust foreclosure proceeds. Nevertheless, RCW

6

11.76.110 omits reference to any lien. Statutes creating liens are in derogation of the common law such that courts must strictly construe any statute, and courts will not extend a statutory lien to benefit those who do not clearly come within them. *Dean v. McFarland*, 81 Wn.2d 215, 219-20, 500 P.2d 1244 (1972); *Pacific Gamble Robinson Co. v. Chef-Reddy Foods Corp.*, 42 Wn. App. 195, 198-99, 710 P.2d 804 (1985). From this principle of statutory construction, we derive a rule that a statute does not create any lien, let alone a super priority lien, unless the statute expressly creates a lien. We hold that a decedent's estate enjoys no lien on the decedent's encumbered property or the proceeds from the sale of encumbered property.

RCW 11.76.110 establishes an order of payment priority for estate debts, with the cost of administration holding first urgency. The statute, however, does not mention to what sources of estate revenue the order of priority extends, let alone declare that the list of priority applies to proceeds from the sale of the decedent's secured property by the secured creditor.

We observe that RCW 11.76.110(6) directs that "debts secured by mortgages in the order of their priority" be given a seventh priority in the distribution of funds. We conclude that this subsection of RCW 11.76.110 does not preclude a secured party from foreclosing on the secured property and retaining first priority in payment. With such a foreclosure, the proceeds of the sale do not necessitate probate administration, and,

7

without the asset passing through probate, RCW 11.76.110 does not control until some proceeds from the sale remain after distribution of funds to secured parties. The provisions of RCW 61.24.080 govern until some proceeds remain for distribution through the probate.

As a general rule, the priority of competing lien claims depends on the order in which those claims attached to the encumbered property, subject to recording requirements. *Homann v. Huber*, 38 Wn.2d 190, 198, 228 P.2d 466 (1951); *Summerhill Village Homeowners Association v. Roughley*, 166 Wn. App. 625, 628, 289 P.3d 645 (2012). The law labels this general rule as the "first in time . . . first in right" principle. *Homann v. Huber*, 38 Wn.2d at 198. As an exception to the general rule, when a lien gains priority over an earlier recorded lien, the later lien gains "super priority" status. *Seattle Mortgage Co. v. Unknown Heirs of Gray*, 133 Wn. App. 479, 484, 136 P.3d 776 (2006). Probate statutes do not generally change or reprioritize a credit's interest in specific property. *In re Trustee's Sale of Real Property of Whitmire*, 134 Wn. App. 440, 448, 140 P.3d 618 (2006).

Chapter 11.40 RCW governs claims against an estate. Under RCW 11.40.135, a statute previously quoted, provisions of the chapter do not impact the right of a creditor to realize on its security. RCW 11.40.135 evidences a legislative intent for the avoidance of the distribution rules under RCW 11.76.110 when the creditor forecloses on its security.

8

Stated differently, the creditor may foreclose on its collateral without filing a claim and engaging in the estate administration process.

A Washington decision that supports our conclusion is *Summerhill Village Homeowners Association v. Roughley*, 166 Wn. App. 625. The Condominium Act, chapter 64.34 RCW, declares that a condominium association's lien for common expense assessments shall "be prior to all other liens and encumbrances." RCW 64.34.364(2). The Summerhill Association sent notice to Roughley's mortgagee of the association's intent to foreclose on a lien imposed on Roughley's condominium. The mortgagee ignored the notice and attempted to redeem the property after the foreclosure sale. This court rejected relief for the mortgagee because the association's lien held priority.

*Summerhill Village* illustrates that the Washington Legislature knows how to express its intent when it desires an assessment or expense to gain super priority status. RCW 11.76.110 contains no such language for administration expenses.

Three foreign decisions also support our holding. *In re Lundy Estate*, 291 Mich. App. 347, 804 N.W.2d 773 (2011); *In re Estate of Stephenson*, 217 Ariz. 284, 173 P.3d 448 (Ct. App. 2007); *In re Estate of Larson*, 359 N.W.2d 281 (Minn. Ct. App. 1984). In each decision and under each state's respective probate codes, the decedent's estate sought first payment from a creditor's sale of an encumbered asset. Each court rejected the arguments that the sale of encumbered property is subject to probate court supervision

9

and that the proceeds of the sale must be distributed pursuant to the priorities specified in the statutory analogue to Washington's RCW 11.76.110. The reviewing courts reasoned that a security holder could foreclose on the secured property without filing a claim with the estate.

We value the Estate of Jason Patton's apprehension over the lack of funds to administer a small estate if administration expenses lack a super priority over all assets of the decedent. Nevertheless, in the Patton Estate's circumstance, approximately $2,300 remains available to pay expenses. Chapter 11.62 RCW permits the streamlining of the administration of small estates in order to reduce expenses. The chapter defines small estates as estates with a value of $100,000 or less. RCW 11.62.010(2)(c).

## CONCLUSION

We reverse the trial court. Bank of America may proceed with a nonjudicial foreclosure and receive first priority over proceeds of the sale for purposes of the debt owed on the real property.

_____
Fearing, C.J.

WE CONCUR:

_____      _____
Siddoway, J.                                          Pennell, J.